**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

CAROLYN KAY HUGHES,      )
                            )
          Plaintiff,       )
                            )
         v.            )    C.A. No. 18-59-MPT
                            )
NANCY A. BERRYHILL,       )
ACTING COMMISSIONER OF   )
SOCIAL SECURITY,         )
                            )
          Defendant.   )

## <u>MEMORANDUM</u>

## I.    INTRODUCTION

This action arises from the denial of plaintiff's claim for Social Security benefits. On February 6, 2014, plaintiff filed an application for Social Security Disability Insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").[1]  In her applications, plaintiff alleged she was disabled due to fibromyalgia and arthritis in her knees and back, with disability beginning July 29, 2013.[2]  The claim was denied initially on July 9, 2014, and upon reconsideration on September 26, 2014.[3]  Following the denials, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on November 18, 2014.[4]  The hearing occurred by video conference on December 2, 2016, with plaintiff appearing in New Castle, Delaware, and ALJ C. Howard Prinsloo in St. Louis,

---

[1] D.I. 12-2 at 15.
[2] D.I. 16 at 1 and D.I. 18 at 1.
[3] D.I. 12-2 at 15.
[4] *Id.*

Missouri.[5]  At the hearing, testimony was provided by plaintiff and an impartial

vocational expert, Ray O. Burger.[6]

On January 12, 2017, ALJ Prinsloo issued a decision denying plaintiff's claim.[7]

Plaintiff requested a review of the decision by the Appeals Council, which denied the

review on November 9, 2017.[8]  She then filed a timely appeal with this court.[9]  Presently

before the court are the parties' cross motions for summary judgment.[10]  For the

reasons that follow, the court will grant defendant's motion for summary judgment.

## II.    BACKGROUND

Plaintiff was born on June 22, 1962.[11]  She has a high school education and one

year in college.[12]  She currently lives with her parents in New Castle County, Newark,

Delaware.[13]  Plaintiff has relevant past work experience as a credit analyst for Chase

Manhattan Bank.[14]  She worked at the bank from 1998 until her alleged disability onset

date, July 29, 2013, and has not worked since.[15]  She continues to suffer from a

combination of both physical and mental impairments that include; fibromyalgia,

depression, anxiety, osteoarthritis, and diabetes.[16]  The ALJ found that plaintiff had past

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 27
[8] D.I. 16 at 1 and D.I. 18 at 1.
[9] *Id.*
[10] D.I. 15 and D.I. 17.
[11] D.I. 12-2 at 39.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *See generally* D.I. 12-5, Ex. No. 2D-12D at 169-206.
[16] D.I. 12-2.

relevant work as a charge clerk.[17]

Plaintiff alleges she is disabled under the Act.[18]  To be eligible for disability benefits, plaintiff must not only demonstrate she is disabled within the meaning of §§ 216(i), 223(d), and 1614(a)(3)(A), but additionally, that she meets the insured status requirements of §§ 216(i) and 223.  Plaintiff has sufficiently met the requirements for coverage under §§ 216(i) and 223, and her earnings records show that she has acquired sufficient quarters of coverage to remain insured through March 31, 2019.[19] The remaining issue, is whether plaintiff is disabled under the Act.

### A.    Evidence Presented

Plaintiff has been treated by her primary care providers, John Fenice, M.D., and Mary High, nurse practitioner since August 3, 2009.[20]  They have treated her for chronic medical conditions that include; hypertension, diabetes, mellitus, obesity, generalized osteoarthritis, and fatigue/malaise.[21]  In 2008, plaintiff had cataract surgery on her right eye, and in 2010 she had a hysterectomy and an appendectomy that caused her to miss work and she went on short term disability.[22]

Plaintiff has also been treated by Maged Hosny, M.D., a board certified rheumatologist, and Linda Ashley, a nurse practitioner in his office since July 22, 2013.[23] She initially visited with Dr. Hosny complaining of pain in multiple joints, including her

---

[17] *Id.* at 27
[18] D.I. 16
[19] D.I. 12-2 at 15.
[20] D.I. 12-7, Ex. 1F at 334.
[21] *See generally* D.I. 12-8 and 12-9, Ex. 4F-14F at 387-566.
[22] D.I. 12-2 at 37 and 12-7 at 309.
[23] *See generally* D.I. 12-7.

3

knees, wrists, elbows, and lower back, that dated back over a decade.[24] Dr. Hosny

reported plaintiff had eighteen tender points, including tenderness in her shoulders,

elbows, knees, ankles, cervical, lumbosacral, and thoracic paraspinal muscles.[25] He

further noted, she had normal gait, normal sensation in both extremities, normal digit

and nail examination, no visible swelling in any joint, and full range of movement in all

joints with discomfort on overhead reaching.[26] Dr. Hosny referred plaintiff for x-rays of

her knees, pelvis, and lumbar spincem which showed degenerative changes of the

knees, greater on the right; mild hypertrophic spurring in the upper lumbar region

without spondylosis or spondylolisthesis; and a normal pelvis.[27] As a result, he

assessed plaintiff with fibromyalgia and prescribed Tramadol.[28]

     Plaintiff continued to see Dr. Hosny and Linda Ashley for follow-up appointments

in 2013.[29] Plaintiff had been prescribed a cane.[30] Although she had tender points, her

physical examinations revealed no visible synovial swelling, normal gait and station, and

no neurological deficits.[31] Dr. Hosny changed her prescription to Cymbalta in August

2013, from which plaintiff reported she had some relief of symptoms, and Ashley added

Flexeril.[32]

     In October 2013, Ashley instructed plaintiff to stop taking Flexeril, but added

---

[24] D.I. 12-8, Ex. 5F at 429.
[25] *Id.* at 430.
[26] *Id.*
[27] D.I. 12-7 and D.I. 12-8.
[28] D.I.,12-8, Ex. 5F.
[29] D.I. 12-7 1F-3F at 306-386.
[30] *Id.*
[31] *Id.*
[32] *Id.*

Tizanidine because she complained of muscle spasms at night that affected her sleep.[33] Plaintiff has not undergone any form of physical therapy or received medication for her degenerative joint disease.[34]  Dr. Hosny's treatment notes through August 2016 show that she continued to complain of widespread joint pain and muscle spasms.[35]  Physical examinations showed normal gait, station, range of motion, muscle tone, and strength.[36] Treatment notes from Dr. Fenice showed similar findings, however, on November 4, 2015, Dr. Fenice examined plaintiff and indicated she was incapable of performing sedentary work.[37]

His assessment was made despite observing she had normal range of motion, motor function, strength, no tenderness, normal gait, and no neurological deficits.[38]  Dr. Fenice maintained plaintiff's symptoms were fair and included dizziness, fatigue, and chronic muscle aches which are not relieved by rest.[39]  Her pain is with any physical activity, any repetitive action, such as typing and sweeping, which causes muscles to spasm and pain that forces her to stop and take medication and rest.[40]  Clinical findings and objective signs supporting her limitations include multiple tender points on arms, thighs, calves, and back and shoulder blades.[41]  Plaintiff's treatment consisted of Tramadol for pain, Tizanidine for myalgia, and Saville for depression and fibromyalgia.[42]

---

[33] D.I. 12-8 at 420.
[34] D.I. 12-7 and D.I. 12-8.
[35] D.I. 12-7 Ex. 1F-3F at 306-386.
[36] *Id.* at 353-56.
[37] D.I. 12-10, Ex. 15F at 546.
[38] D.I. 12-9 and D.I. 12-10.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*

Her impairments have lasted or are expected to last for at least twelve months, and she is not a malingerer.[43]

Further, emotional factors contributed to the severity of plaintiff's symptoms and functional limitations, including depression and anxiety.[44] Dr. Fenice maintains plaintiff is incapable of even low stress jobs due to physical activity triggering pain which causes incapacitation.[45] He purports that plaintiff can walk for less than one city block without rest or severe pain and can sit for ten minutes at one time, for a total of two hours per day.[46] His further conclusions are she can stand for fifteen minutes at a time, for a total of one hour per day; needs to constantly change positions and can sit and stand or walk for less than two hours per day.[47] Additionally, she requires use of a cane for occasional standing and walking and she uses a cane daily.[48]

On October 9, 2014, NP Ashley completed a RFC evaluation for the diagnoses of fibromyalgia and osteoarthritis of the knees.[49] She reported plaintiff's prognosis was fair and her symptoms included daily, widespread severe pain that interferes with daily activities; her pain is a dull, aching pain in both lower extremities, which worsens with activity and is not completely relieved with rest.[50] Clinical findings supporting plaintiff's limitations include multiple tender points, and her treatment has consisted of medication

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] D.I. 12-8, Ex. 7F at 453-457.
[50] *Id.*

management of Tramadol, Tizanidine, and Duloxetine.[51]  Plaintiff's impairments have

lasted at least twelve months and she is not a malingerer.[52]  NP Ashley further

maintained, that plaintiff's emotional factors, including depression and anxiety,

contributed to her symptoms and functional limitations, and her impairments are

reasonably consistent.[53]  Ashley further reported that her experience of pain and other

symptoms is constantly severe enough to interfere with the attention and concentration

required to perform simple tasks and she is incapable of even low stress jobs.[54]  Ashley

noted that plaintiff can walk less than one city block without rest or severe pain, can sit

for fifteen minutes and stand for ten minutes at one time, and can stand or walk for less

than two hours and sit for two hours total in a workday, but would require the use of a

cane while engaging in occasional standing or walking.[55]

Because of plaintiff's functional limitations, Ashley concluded that she will need

periods of walking around during the workday every fifteen to twenty minutes for up to

fifteen minutes in duration, and requires a job that permits shifting at will from sitting,

standing, or walking, with unscheduled breaks every fifteen to thirty minutes.[56]  Plaintiff

can rarely lift and carry less than ten pounds, look down, twist and climb stairs, and

occasionally turn her head, look up and maintain her head in a static position, and can

never stoop, crouch or climb ladders.[57]  Use of her hands is limited to fifteen percent of

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*

the day for grasping, fifteen percent for fine manipulation of her fingers and a ten percent limitation of her arms for reaching.[58]  Additionally, Ashley opined that plaintiff would be absent from work for more than four days per month due to her impairments and treatments.[59]

Plaintiff underwent a second RFC evaluation by Dr. Hosny and FNP Ashley, who confirmed all of these findings on November 10, 2015.[60]  On July 28, 2016, Dr. Hosney and NP Ashley completed a third RFC evaluation indicating plaintiff continued to be treated for the same diagnoses and had the same prognosis.[61]  At this time, her symptoms include daily, widespread severe pain in muscles and joints which interferes with normal daily activity, dull, aching pain in the bilateral lower extremities, that worsens with activity and is not relieved by rest.[62]  Her medication management includes Savella, Tramadol, Tizanidine, Benicar, Metformin, Simvastatin, and Valsartan.[63]  An additional RFC was conducted by Dr. Fenice, reporting similar findings.[64]

### B.    Hearing Testimony

#### 1.    Plaintiff's Testimony

At the administrative hearing on December 2, 2016, plaintiff testified to her background, work history, and alleged disability.[65]  Plaintiff is fifty-six years old, single,

---

[58] *Id.*
[59] *Id.*
[60] D.I. 12-8, Ex. 8F at 458-461.
[61] D.I. 12-9, Ex. 11F at 521-525.
[62] *Id.*
[63] D.I. 12-6, Ex. 18E at 287.
[64] D.I. 12-9, Ex. 13F at 560-563.
[65] D.I. 12-2 at 39-53.

and lives with her parents in a two-story home in Newark, Delaware.[66]  Plaintiff has a

high school education, followed by a year of college where she majored in biology.[67]

She last worked full time in 2013, employed as a credit analyst for 15 years at J.P.

Morgan Chase in Wilmington, Delaware.[68]  Plaintiff has not sought full time employment

since 2013, because of fibromyalgia and arthritis in her back and knees.[69]  She testified

that this pain prevented her from performing her job, caused significant loss of time at

work, and is the reason she has not sought subsequent employment.[70]

Plaintiff claimed that her pain is constant, "like when you have the flu and you

have that overall achiness," further noting that, "it's a deep ache and it just never goes

away."[71]  She confirmed taking medication for pain.[72]

Plaintiff testified she is unable to lift and carry items weighing up to fifteen pounds

and needs assistance from her father to do various activities, such as cook, shop, and

laundry.[73]  She uses an Acorn step-climbing seat to proceed up and down the stairs.[74]

Plaintiff further testified that she is only able to walk about one city block before she

must rest.[75]  She claimed she deals with depression and anxiety, which "sometimes

makes her crazy" causing crying episodes because of pain.**[76]**

---

[66] *Id.* at 39.
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.* at 46.
[75] *Id.*
[76] *Id.* at 50.

## 2. Vocational Expert's Testimony

Testimony was provided at the hearing by vocational expert Ray O. Burger.[77] Mr. Burger is president and owner of Vocational Alternatives, Inc., an employment and vocational consulting firm that provides consults to attorneys, the federal government, and business.[78] Additionally, he testifies as an expert and provides mental health and vocational counseling.[79] He characterized plaintiff's past work history as a charge account clerk, as sedentary work, with a specific vocational preparation level of 3.[80] He addressed the hypothetical situations posed by the ALJ.[81]

The ALJ asked if an individual of plaintiff's age, education, and work history, who retains the residual functional capacity ("RFC") for sedentary work, but would be incapable of climbing ladders, ropes or scaffolds and would be limited to only occasional balancing, stooping, kneeling, crouching or crawling, could perform any past work.[82] Mr. Burger testified that an individual with these limitations could perform the past work.[83]

The ALJ added that if this individual is limited to only simple, routine and repetitive tasks, how would that affect their ability to perform past work.[84] Mr. Burger testified that such past work could not be performed.[85]

## C. ALJ's Finding of Facts and Conclusions of Law

---

[77] *Id.* at 53.
[78] D.I. 12-6 Ex. 25E at 305.
[79] *Id.*
[80] D.I. 12-2 at 53.
[81] *Id.*
[82] *Id.* at 54.
[83] *Id.*
[84] *Id.*
[85] *Id.*

Based on the application for a period of disability and disability insurance benefits protectively filed on February 6, 2014, the ALJ found the plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.[86]  The ALJ's disability decision from the 2016 hearing are summarized as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.

2.  The claimant has not engaged in substantial gainful activity since July 29, 2013 the alleged onset date (20 CFR 404.1571 et seq.).

3.  The claimant has the following severe impairments:  degenerative joint disease; fibromyalgia; and obesity (20 CFR 404.1520(a)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:  the claimant is limited to only occasional balancing, stooping, kneeling, crouching, or crawling. Additionally, she is limited to work that does not involve climbing of ladders, ropes, or scaffolds.

6.  The claimant is capable of performing past relevant work as a charge account clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from July 29, 2013, through the date of this decision (20 CFR 404.1520(f)).[87]

## III.    STANDARD OF REVIEW

---

[86] *Id.* at 27.
[87] D.I. 12-2 at 17-27.

## A. Motion for Summary Judgment

Each party moved for summary judgment.[88]  In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[89]  If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[90]

This standard does not change merely because there are cross-motions for summary judgment.[91]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[92]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[93]

## B. Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial

---

[88] D.I. 15 (Plaintiff's motion for summary judgment); D.I. 17 (Defendant's motion for summary judgment).

[89] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[90] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[91] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

[92] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[93] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

evidence to support the ALJ's decision.  The Commissioner's factual decisions are

upheld if supported by substantial evidence.[94]  Substantial evidence means less than a

preponderance of the evidence, but more than a mere scintilla of evidence.[95]  As the

United States Supreme Court has found, substantial evidence "does not mean a large

or significant amount of evidence, but rather such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."[96]

In determining whether substantial evidence supports the Commissioner's

findings, the court may not undertake a de novo review of the Commissioner's decision

and may not re-weigh the evidence of record.[97]  The court's review is limited to the

evidence that was actually presented to the ALJ.[98]  The Third Circuit has explained that

a:

> single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is overwhelmed by other evidence,
> particularly certain types of evidence (e.g., evidence offered by treating
> physicians) or if it really constitutes not evidence but mere conclusion.[99]

Thus, the inquiry is not whether the court would have made the same

determination, but rather, whether the Commissioner's conclusion was reasonable.[100]

Even if the court would have decided the case differently, it must defer to the ALJ and

affirm the Commissioner's decision so long as that decision is supported by substantial

---

[94] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Medical Center v.
Heckle*, 806 F .2d 1185, 1190 (3d Cir. 1986).
[95] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[96] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[97] *Monsour*, 806 F.2d at 1190.
[98] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001)
[99] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[100] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

evidence.[101]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[102] In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[103] The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[104] Thus, this court's review is limited to the four corners of the ALJ's decision.[105]

### C.    ALJ's Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to assist "individuals who have attained the age of 65 or are blind or disabled" by setting a minimum income level for qualified individuals.[106] A claimant – in order to establish SSI eligibility – bears the burden of proving that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[101] *Monsour*, 806 F .2d at 1190-91.
[102] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[103] *Sec. & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 196 (1947).
[104] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).
[105] *Cefalu v. Barnhart*, 387 F. Supp.2d 486, 491 (W.D. Pa. 2005).
[106] *Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982 ed.)).

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of or not less than twelve months."[107]  Moreover, "the physical or mental impairment or impairments must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy."[108]  Furthermore, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are evidenced by medically acceptable clinical and laboratory diagnostic techniques.[109]

### 1.     Five-Step Test.

The Social Security Administration uses a five-step sequential claim evaluation process to determine whether an individual is disabled.[110]

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  If a claimant is found to be engaged in substantial activity, the disability claim will be denied.
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  The

---

[107] 42 U.S.C. § 423(d)(1)(A).
[108] 42 U.S.C. § 423(d)(2)(A).
[109] 42 U.S.C. § 423(d)(3).
[110] 20 C.F.R. §416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

claimant bears the burden of demonstrating an inability to return to her past relevant work.  If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.  The ALJ will often seek the assistance of a vocational expert at this fifth step.[111]

If the ALJ determines that a claimant is disabled at any step in the sequence, the analysis ends.[112]

## 2.    Weight Afforded Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[113]  Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on record.[114]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[115]  If the ALJ rejects the treating physician's

---

[111] *Plummer*, 186 F.3d at 427.

[112] 20 C.F.R § 404.1520(a)

[113] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)

[114] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).

[115] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).

assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[116]  If an opinion is rejected, then the ALJ must provide an explanation for the rejection.  However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[117]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion; rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[118]  Therefore, only the ALJ can make a disability determination.

### 3.    Evaluation of Subjective Accounts of Pain[119]

Statements about the symptoms alone never establish the existence of any impairment or disability.[120]  The Social Security Administration uses a two-step process to evaluate existence and severity of symptoms.

### a.    Step One, Existence of Pain

First, the ALJ must find a medically determinable impairment – proven with medically acceptable clinical and laboratory diagnostic data – that could reasonably be expected to produce the claimant's symptoms.  Otherwise, the ALJ cannot find the

---

[116] *Plummer*, 186 F.3d at 429.
[117] *Cotter v. Harris,* 650 F.2d 481, 482 (3d Cir. 1981).
[118] *See* 20 C.F.R. § 416.927 (e)(1).
[119] *See* 20 C.F.R §§ 416.928-29; *see also* SSR 96-7p.
[120] A symptom is an individual's own description of physical or mental impairments such as pain, fatigue, shortness of breath and other complaints.  *see* SSR 96-7p.

applicant disabled, no matter how genuine the symptoms appear to be.

This step does not consider the intensity, persistence, and limiting effects of the symptoms on the claimant:  it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.

Analysis stops at this step where the objectively determinable impairment meets or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se*.

### b.    Step Two, Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  At this step, the ALJ must consider the entire record, including medical signs, laboratory findings, the claimant's statements about symptoms, any other information provided by treating or examining physicians and psychologists, and any other relevant  evidence in the record, such as the claimant's account of how the symptoms affect her activities of daily living and ability to work.[121]

Where more information is needed to assess a claimant's credibility, the ALJ must make every reasonable effort to obtain available information that would shed light on that issue.  Therefore, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i)  The applicants' account of daily activities;

--------------------------------

[121] 20 C.F.R. § 404.1529.

(ii)  The location, duration, frequency, and intensity of pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v)  Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or other symptoms.[122]

### 4.    Factors in Evaluating Credibility[123]

A claimant's statements and reports from medical sources and other persons with regard to the seven factors, noted above, along with any other relevant information in the record, provide the ALJ with an overview of the subjective complaints, and are elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility.  Since the effects of symptoms can often be clinically observed, when present, they tend to lend credibility to a claimant's allegations.  Therefore, the adjudicator should review and consider any available objective medical evidence

---

[122] 20 C.F.R. § 404.1529
[123] SSR 16-3p.

concerning the intensity and persistence of pain or other symptoms in evaluating the claimant's statements.

Persistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's allegations. An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when

evaluating the credibility of her testimony or statements.[124]  A claimant's testimony is accorded substantial credibility when she has a long work history, which demonstrates it is unlikely that, absent pain, she would have ended employment.[125]

### 5.    Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[126]  "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."[127]

## IV.    DISCUSSION

### A.    Parties' Contentions

In her appeal, plaintiff argues the opinions of her treating physicians, Drs. Fenice and Hosny, establish greater limitations than set forth in the RFC and, pursuant to agency authority, plaintiff is disabled.[128]  She contends the ALJ's evaluation of the opinion evidence is insufficient as a matter of law and contrary to the regulations, Agency policy and Third Circuit precedent.[129]  Plaintiff further contends that compounding the above error, the ALJ's RFC finding is insufficient as a matter of law

---

[124] 20 C.F.R. § 404.1529(a)(3)

[125] *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984)(citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981)).  In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company.  He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.

[126] SSR 83-20.

[127] *Id.*

[128] D.I. 16 at 6.

[129] Id. at 2.

because it fails to account for all of the practical effects of plaintiff's fibromyalgia and, critically, fails to explain the omission of the demonstrated limitations.[130]

Alternatively, defendant maintains the standard for establishing disability pursuant to the Act is stringent.[131]  Defendant further counters that substantial evidence supports the ALJ's evaluation of the medical opinion evidence.[132]  Furthermore, defendant contends that substantial evidence supports the ALJ's evaluation of plaintiff's RFC, where he thoroughly reviewed the medical and other evidence of record and clearly articulated why mental functional limitations were not warranted in the RFC finding.[133]

### B.    Disability Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[134]  In order to qualify for disability insurance benefits, a claimant must establish she was disabled prior to the date she was last insured.[135]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[136] To be disabled, the severity of the impairment must prevent return to previous work, and

---

[130] Id. at 16.
[131] D.I. 18 at 8-9.
[132] *Id.* at 9-15.
[133] *Id.* at 15-17.
[134] *Bowen*, 482 U.S. at 140.
[135] 20 C.F.R. § 404.131.
[136] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).

considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[137]

As noted previously, in determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[138] If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner does not review the claim further.[139]

When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[140] If a claimant's impairments, either singularly or in combination, fail to meet or medically equal any listing, the analysis continues.[141] In the analysis through the five steps, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[142] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [her] impairment(s)."[143]

If the claimant is unable to return to her past relevant work, the Commissioner then determines whether the claimant's impairments preclude adjusting to any other available work.[144] At this final step, the burden is on the Commissioner to show the

---

[137] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).
[138] 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d Cir. 1999).
[139] 20 C.F.R. § 404.1520(a)(4).
[140] 20 C.F.R. § 404.1520(a)(4)(iii).
[141] 20 C.F.R. § 404.1520(e).
[142] 20 C.F.R. § 404.1520(a)(4)(iv); *see also Plummer*, 186 F.3d at 428.
[143] *Fargnoli*, 247 F.3d at 40.
[144] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.

claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[145]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments, often through the assistance of a vocational expert.

### 1. Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as a whole in making a disability decision.[146]  The evidence presented to the ALJ may contain differing medical opinions from both treating and non-treating physicians, as well as other testimony.[147]  Normally, the evidence presented by the treating physician is given controlling weight as that individual may be most acquainted with the medical history of the claimant.  However, in circumstances where the treating physician's opinion is not consistent with the record as a whole or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques", an ALJ may reasonably accord little weight to the treating physician's opinion.[148]  Plaintiff in this case argues the opinions of her treating physicians establish greater limitations than set forth in the RFC and, the ALJ's evaluation of the opinion evidence is insufficient as a matter of law.  This court finds that the proper level of deference was given to plaintiff's treating physicians and the ALJ's evaluation of the evidence was sufficient.

---

[145] *Id.*
[146] See 20 CFR 404.1527(e)(2).
[147] See 20 CFR 404.1512.
[148] See 20 CFR 404.1527(c).

### a.　　Treating Physicians

The ALJ considered the assessments provided by:  plaintiff's rheumatology providers, Dr. Hosny and Linda Ashley, primary care providers Dr. Fenice and Mary High, and mental health provider Mr. Napolin.  Additionally, the ALJ considered the opinions of State agency consultants Naphtali Britman, M.D. and Jennifer Wilson, D.O., who reviewed plaintiff's medical history in July and September 2014.[149]

### i.　　Rheumatologist - Dr. Hosney and NP Linda Ashley

Despite Ms. Ashley and Dr. Hosny's positions as treating providers for plaintiff's fibromyalgia, the ALJ properly gave their assessments little weight, because their restrictions were unsupported by the evidence of record and based primarily upon plaintiff's subjective complaints.[150]

Dr. Hosny and Ms. Ashley reported plaintiff was unable to work.  Further their reported work restrictions were inconsistent with the evidence of record, including their own treatment notes.  Plaintiff was alleged to have widespread tenderness, but presented with normal gait, station, range of motion, muscle tone, and strength on multiple occasions during the period of alleged disability, which shows she is not as limited or restricted as noted.  Additionally, they reported extreme limitations, including plaintiff's inability to walk more than one block without rest, and her need for unscheduled breaks every fifteen to thirty minutes.  However, Dr. Hosny and Ms. Ashley's recommended treatment remained essentially unchanged between 2013 and

---

[149] D.I. 12-2 at 23.
[150] *Id.* at 24-25

2016, with no treatment plan to improve plaintiff's physical functioning.

### ii.  Primary Care Provider - Dr. Fenice

The ALJ also afforded Dr. Fenice's limitations little weight despite his position as plaintiff's primary care provider because his limitations were inconsistent with the record, including his own treatment notes.[151]  In November 2015, Dr. Fenice reported plaintiff's restrictions, but upon his examination, he noted her musculoskeletal examination demonstrate normal range of motion, normal strength, no tenderness, and normal gait.

Further, despite that Dr. Fenice continued the same limitations in August 2016, his records indicate he did not examine plaintiff as of the date of his restrictions despite his contact with her every three months.  The ALJ also determined that as a primary care physician, Dr. Fenice is not a rheumatologist or orthopedist, and his assessment deserves less weight than that of a more specialized, treating physician.

### iii.  Donald Napolin, L.C.S.W.

The ALJ found, as a licensed clinical social worker, Mr. Napolin is not an acceptable medical source and his opinion, standing alone, cannot constitute documented severe or disabling vocational limitations, and afforded little weight to his determination.[152]  Mr. Napolin reported that plaintiff suffered from seriously limited, or no useful ability in all areas of mental abilities and aptitudes required for unskilled to skilled work, and that she suffered from marked limitations in her activities of daily living, social

---

[151] *Id.* at 25-26.
[152] *Id.* at 26.

functioning, and concentration, persistence, or pace.

Despite his findings, plaintiff reported generally normal activities of daily living, social functioning, concentration, persistence, and pace, regarding her mental functioning, in contradiction of his findings.  She further denied any anxiety or depression on a number of occasions.  Additionally, Mr. Napolin indicates limitations applying as early as July 2013, however he did not begin treating plaintiff until more than three years later in August 2016.

### b.      State Agency Consultants

The ALJ properly gave the non-examining consultants' assessments great weight in their determinations of plaintiff.  Such consultants have a high level of understanding of the Social Security disability program and reviewed all available evidence in the record when forming their opinions.  Naphtali Britman M.D., and Jennifer Wilson, D.O., determined that plaintiff could perform sedentary work with the following limitations: occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; and never climbing of ladders, ropes, or scaffolds.[153]  They further noted plaintiff's reliance on a cane for ambulation.[154]  Their opinions are generally consistent with the evidence of record.[155]  Because plaintiff's treatment and examinations remained generally the same from 2013 to 2016, the ALJ determined that the updated medical evidence of record received after the consultants' assessments did not warrant additional limitations.

---

[153] *Id.* at 23-24.
[154] *Id.*
[155] *Id.*

## 2. The ALJ's RFC Assessment

Plaintiff alleges the ALJ's RFC finding is insufficient as a matter of law because it fails to account for all of the practical effects of her fibromyalgia and, importantly, fails to explain the omission of the demonstrated limitations.[156]

An RFC is an individual's ability to perform in a work setting despite impairments and limitations.[157] In making this finding, the ALJ must consider all of the claimant's impairments, including those that are non-severe. Although the ALJ may weigh the credibility of the evidence, he must indicate the evidence which he rejects and his reason(s) for discounting such evidence.[158]

In the current matter, the ALJ found plaintiff is capable of performing past relevant work as a charge account clerk, and this work does not require the performance of work-related activities precluded by her RFC.[159] The ALJ specifically found that plaintiff's treatment records to be generally consistent with her medically determinable impairments, but inconsistent with her subjective reports of disabling symptoms, which suggest that her symptoms are not as severe as alleged.[160] The medical evidence failed to indicate that plaintiff experiences symptoms that cause work-related functional limitations beyond those stated in the RFC.

---

[156] D.I. 16 at 16-20.
[157] 20 C.F.R. § 404.1545.
[158] *Plummer,* 186 F.3d at 429.
[159] D.I. 12-2 at 27.
[160] *Id.* at 26.

Although, despite treatment through medication and use of a cane, plaintiff has functional limitations due to degenerative joint disease, fibromyalgia, and obesity.[161] This evidence, however, shows that she retains the functional abilities to perform work at the sedentary exertional level with postural limitations.[162]  Additionally, the ALJ found, given plaintiff's weight, tenderness, fatigue, headaches, muscle spasms, and knee pain, she is limited to only two hours of standing and/or walking per workday with only occasional balancing, stooping, kneeling, crouching, or crawling and no climbing of ladders, ropes, or scaffolds.[163]

The ALJ found that despite providing plaintiff with every benefit of the doubt in her favor, and crediting her testimony that was consistent with the medical evidence, her allegations regarding functional limitations are unsupported by the record.[164]  The record lacks any evidence showing she is significantly limited, suggesting her limitations are not as severe as reported.[165]  As a result, her allegations of impairment that were not adopted into the finding of her RFC and after fully considering the record, medical opinion evidence, and statements by plaintiff, the ALJ properly concluded that her RFC adequately accounts for her present capacity.

**V.      Conclusion**

Therefore, Plaintiff's Motion for Summary Judgment (D.I. 15) is denied; and Defendant's Motion for Summary Judgment (D.I. 17) is granted.  An order consistent

---

[161] *Id.*
[162] *Id.*
[163] *Id.*
[164] *Id.*
[165] *Id.*

with the findings in this Memorandum shall follow.


Date:  October 30, 2018                              /s/ Mary Pat Thynge
                                                     Chief U.S. Magistrate Judge